UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____ )
Jeffrey Solomon,                          )
     Plaintiff,                         )
                                          )
vs.                                       )
                                          )
Annie Dookhan, Donald F. Keenan, Kate Corbett,    )    C.A. No.: 1:13-cv-10208-GAO
JudyAnn Bigby, Jon Auerbach, Julie Nassif, Linda Han,    )
Daniel Conley, and Suffolk County District Attorney's    )
Office,                                   )
     Defendants.                        )
                                          )
_____ )

---

**MEMORANDUM IN OPPOSITION TO THE MOTION TO DISMISS OF THE DEFENDANT, DONALD KEENAN, AFTER LEAVE TO FILE GRANTED JULY 1, 2013.**

     The plaintiff, Mr. Jeffrey Solomon ("Solomon" or "plaintiff") hereby moves this Honorable Court to deny the defendants' Motion to Dismiss made pursuant to Fed. R. Civ. P 12 (b) (6). Considered in a light most favorable to the plaintiff, the pleadings and all reasonable inferences drawn therefrom preclude the defense of immunity and thus the plaintiff's claims are not barred as a matter of law.  In as much as the plaintiff has pled claims for which relief can be granted, the defendant's Motion should be denied.

    **I.**  **THE AMENDED COMPLAINT**

     The Amended Complaint was filed on March 28, 2013 and named various defendants, including Donald F. Keenan, (hereinafter "Keenan" or "the defendant").  **See AC**, Amended Complaint.[1] (hereinafter AC, at ¶ _.)  The Amended Complaint, the public record, and matters subject to Judicial Notice, as well as all favorable inferences, provides ample evidence that the

---

[1] The plaintiff incorporates by reference AC to the defendant's Motion.

defendant violated Solomon's Constitutional Rights as follows:

1. The defendant destroyed exculpatory evidence;
2. The defendant fabricated evidence;
3. The defendant threatened and intimidated plaintiff's counsel; and
4. The defendant maliciously initiated and assisted in the plaintiff's prosecution without probable cause.

On December 10, 2010, Solomon was arrested by the Boston Police Drug Control Unit, after Sergeant Detective Keenan ("Keenan") an "undercover" officer, bought what Solomon claimed to be counterfeit drugs. **See AC, at ¶12-13.** Keenan conducted a "field-test" of the substances and the test came back as negative, indicating the absence of any illicit drugs, specifically cocaine. **AC, at ¶13.** Keenan then allegedly discarded the swipe used to field test the substance and the portion of the substance that was field tested. **AC, at ¶14**. The Boston Police seized the substances and delivered them to the Department of Public Health's Hinton Laboratory ("Hinton Laboratory") in Jamaica Plain. **AC, at ¶14-15.** Solomon was charged with possession with intent to distribute a counterfeit substance and distribution of a counterfeit substance, both misdemeanors with a maximum penalty of one year in the House of Correction. **AC, at ¶13.**

On or about April 13, 2011, Attorney Sanders of the Committee of Public Counsel Services and Assistant District Attorney Ryan Mingo of the Suffolk County DA's Office met with Keenan to inspect the evidence seized from Solomon. **AC, at ¶23**. At this meeting, Keenan showed Sanders the substances seized, which Sanders noted did not have any expression of blue coloring. **Id. at ¶24**. Keenan explained that as part of his routine practice when conducting field tests, he would swipe a small piece of the substance seized and look for a result, then discard the tested pieces on the ground. **Id. at ¶26.** He further said that was likely to have occurred in Solomon's case. **Id**. Further, when meeting with Attorney Sanders, Keenan told Sanders not to be like those other CPCS attorneys, referring to the zealous state public defenders. He told her that her client

was a bad guy who had been around a while.  He said he and his fellow officers could make things easy or not.  **AC, at ¶26-27**

On July 1, 2011, a Suffolk County Grand Jury heard evidence related to Solomon's case. Keenan testified under oath at the grand jury that he conducted a preliminary field test on the substance which initially did not indicate the presence of narcotics.  **AC, at ¶29**.  Keenan later, at some undisclosed time, viewed the substance and observed a color change consistent with the presence of cocaine.  **Id**. **at 22, 30**.  Keenan explained that the lack of an initial positive field test could be explained by the way crack cocaine is produced, such that crack cocaine that was not mixed properly and only a portion of the substance contained cocaine.  **Id**. **at 29**.  Keenan also introduced the certificates of analysis signed by chemists Annie Dookhan and Kate Corbett, which falsely certified that the substances were cocaine. **Id. at 30**.  The grand jury indicted Solomon for possession with intent to distribute a Class B substance and distribution of a Class B substance, both in a school zone, carrying with them mandatory minimum penalties of fourteen years in State Prison.  **AC, at 31**.

On September 27, 2012, as part of the investigation into Annie Dookhan's alleged criminal and fraudulent conduct, the State Police retested the substances and found that they contained no illicit drugs.  **Id. at 36**.  The government filed a nolle prosequi in Solomon's case formally discharging him from any criminal process in Suffolk County.  Id. at 38.

## II. <u>SOLOMON HAS PLED SUFFICIENT FACTS TO WITHSTAND THE MOTION TO DISMISS AT THIS EARLY STAGE OF THE PROCEEDING</u>

### A. <u>Legal Standard</u>

To survive a Rule 12 (b) (6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp</u>. v. <u>Twombly</u>, 550 U.S. 544, 570 (2007).  A mere recital of the legal elements supported only by

conclusory statements is not sufficient to state a cause of action. See id. at 555, 557.  In reviewing

a motion to dismiss under Rule 12(b)(6), a district court "may augment facts and inferences with

data points gleaned from documents incorporated into the complaint, matters of public record, and

facts susceptible to judicial notice.  See Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir.

2004).  A court may not review, however, affidavits and miscellaneous documents submitted by

the parties.  Id.

### B.  Solomon was prejudiced by Keenan's Fourteenth Amendment violations.

Keenan first argues that the Plaintiff was not prejudiced by Keenan's Fourteenth

Amendment violations because the plaintiff was never convicted as a result but merely suffered

illegal pretrial detention.  This is a difference without distinction.

An accused held on bail is subjected to a well-recognized deprivation of liberty during the

pretrial phase of a criminal case. See e.g. Gerstein v. Pugh, 420 U.S. 103, 114 (1975) ("Pretrial

confinement may imperil the suspect's job, interrupt his source of income, and impair his family

relationships.")  A pretrial detainee's rights are "at least as great" as a convicted prisoner's rights.

Bell v. Wolfish, 441 U.S. 520, 545 (1979) (holding that "pretrial detainees, who have not been

convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by

convicted prisoners.").

For this reason, the courts do not differentiate between the rights of pretrial detainees and

convicted prisoners. See e.g. Feeley v. Sampson, 570 F. 2d 364, 369 (1st Cir. 1978) ("the

constitutional provision most commonly, and we think accurately, cited as protecting detainees is

the due process clause of the fourteenth amendment."); Klebanowski v. Sheahan, 540 F.3d 633,

634 (7th Cir. 2008).  Where the issue has arisen, Courts have similarly recognized no difference

between pretrial detainees and convicted prisoners in considering Due Process claims brought

pursuant to §1983.  See, e.g. <u>Sanders</u> v. <u>English</u>, 950 F.2d 1152, 1162 (5th Cir. 1992) (finding that

a jury could hold a prosecutor responsible under §1983 for ignoring substantial exculpatory

evidence in a case involving  pretrial detention.); <u>Jones</u> v. <u>City of Chicago</u>, 856 F.2d 985 (7th Cir.

1988)(finding a §1983 claim lied where the plaintiff had been denied exculpatory evidence and the

case was dismissed during trial.); <u>Baker</u> v. <u>McCollan</u>, 443 U.S. 137, 142 (1979)(an accused may be

deprived over time of liberty without due process of law if protections are not followed from the

time of arrest to trial.)

Here, Keenan violated the plaintiff's Fourteenth Amendment rights by intentionally

fabricating evidence with the intention of misleading the grand jurors and public officials.  **AC, at**

**¶¶ 29-30**.  He also failed to produce exculpatory evidence.  **AC, at ¶ 25**.  As a result of Keeler's

violations, the plaintiff was illegally detained pretrial on a $1,000 bail order out of Suffolk

Superior Court for several months.  Ex. 1, Docket SUCR11-10667.  As such, he suffered a

recognizable harm as the result of Keenan's due process violations in this case.  <u>Baker</u> v.

<u>McCollan</u>, 443 U.S. 137, 142 (1979).

### C.  <u>Solomon pled sufficient facts to support the MCRA claim</u>

Keenan next argues that his intimidation of Attorney Sanders and the threats he conveyed

to her cannot be a basis for a MCRA claim because Keenan violated no constitutional right by his

actions.  See, Def. Memo, III, pp. 7-9.  Here, Keenan told Sanders that he and his fellow officers

had problems with CPCS (the state public defender's office) and that he and his fellow officers

could make things easy or not.  **AC, at ¶ 26**. He also said Solomon has been around a long time

and that Solomon was not a good guy.  **AC, at ¶ 27**.

The Massachusetts Supreme Judicial Court explained that actionable coercion is "the

application to another of such force, either physical or moral, as to constrain him to do against his

will something he would not otherwise have done."  See Buster v. Moore, 438 Mass. 635, 646

(2003) (citing Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467 , 474, cert.

denied, 515 U.S. 868 (1994)); Delaney v. Chief of Police of Wareham, 27 Mass. App. Ct. 398, 409

(1989) (coercion may supply the foundation for the MCRA count.); Swanset Dev. Corp. v.

Taunton, 423 Mass. 390, 396 n.11 (1996) (coercion which does not involve physical force may

violate the [a]ct"); United States v. Beaty, 288 F.2d 653, 656 (6th Cir. 1961) (holding that

threatening to evict tenants if they exercised their right to vote would constitute coercion).

    Here, Keenan threatened to make things difficult for Attorney Sanders in her role as

advocate for Solomon, whom Keenan deemed "not a good guy."  In so doing, Keenan also would

have known that Attorney Sanders was ethically bound to relate the communication to her client,

extending the threat to Mr. Solomon.  See, Mass. Rules of Prof. Conduct 1.4(b). ("A lawyer shall

explain a matter to the extent reasonably necessary to permit the client to make informed decisions

regarding the representation.").  Cf. Commonwealth v. Hamilton, 459 Mass. 422, 428 (2011)

(probation officer threatened with harm to her daughter); Columbus v. Biggio, 76 F. Supp. 2d. 43,

54 (D. Mass. 1999).  Keenan's coercion is further evidenced by the fact that after Attorney

Saunders continued to zealously represent of her client, Keenan carried out his threat and assisted

the Assistant District Attorney in procuring the indictment by fabricating evidence.

    Under these circumstances, Keenan's threat to make things easy or not easy for Solomon's

counsel, in combination with his use of intimidation, impermissibly violated Solomon's Sixth

Amendment right to counsel and his right to Due Process of law pursuant to the Fourteenth

Amendment.  See, e.g., United States v. Morrison, 602 F.2d 529, 532 (3d Cir. 1979), (disparaging

comments by enforcement official towards defendant's counsel interfered with the attorney-client

relationship violating the defendant's sixth amendment right to counsel), rev'd on other grounds,

449 U.S. 361 (1980); <u>United States</u> v. <u>Glover</u>, 596 F.2d 857, 861 (9th Cir. 1979, cert. denied) ("disparaging comments about counsel, particularly when coupled with a warning that reliance on counsel's judgment will not keep the defendant out of jail, can be detrimental to the attorney-client relationship"); <u>Commonwealth</u> v. <u>Manning</u>, 373 Mass. 438, 442-43 (1977) (Supreme Judicial Court of Massachusetts held that a government agent's remarks about counsel violated the defendant's sixth amendment right to counsel and warranted dismissal of the indictment).

### D. <u>Keenan is not Entitled to Qualified Immunity</u>

Public officials are entitled to qualified immunity from personal liability based on acts of discretion. See <u>Harlow</u> v. <u>Fitzgerald</u>, 457 U.S. 800, 807 (1982); <u>Barton</u> v. <u>Clancy</u>, 632 F.3d 9, 21 (1st Cir. 2011). The qualified immunity doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson</u> v. <u>Callahan</u>, 555 U.S. 223, 231 (2009). The courts apply a two-prong analysis in determining questions of qualified immunity. <u>Maldonado</u> v. <u>Fontanes</u>, 568 F.3d 263, 269 (1st Cir.2009). These prongs require that a court decide "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation," <u>Maldonado</u>,568 F.3d at 269.

Whether a right was "clearly established" is further divided into a two part analysis: "(1) 'the clarity of the law at the time of the alleged civil rights violation,' and (2) whether, given the facts of the particular case, 'a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights.'" <u>Barton</u>, 632 F.3d at 22 (alteration in original) (quoting <u>Maldonado</u>, 568 F.3d at 269). An affirmative finding on these inquiries does "not require a case directly on point, but existing precedent must have placed the ... constitutional question

7

beyond debate." <u>Ashcroft</u> v. <u>al-Kidd</u>, 131 S.Ct. 2074, 2083 (2011).  Most significantly, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." <u>Maldonado</u>, 568 F.3d at 269.

The defendant raises two arguments to dismiss based on qualified immunity:  first, he claims that the law relative to malicious prosecution was not clearly established; and second, that no constitutional violation occurred.

As to the first argument, the law recognizes that a §1983 claim of malicious prosecution can be established through the common law elements of malicious prosecution plus a Fourth Amendment violation.  See <u>Harrington</u> v. <u>City of Nashua</u>, 610 F.3d 24, 30 (1st Cir. 2010) (proceeding on the assumption that malicious prosecution "can embody a Fourth Amendment violation and, thus, ground a cause of action under section 1983."); <u>Nieves</u> v. <u>McSweeney</u>, 241 F.3d 46 (1st Cir. 2001)(affirming that the Fourth Amendment may provide a basis for a §1983 claims involving malicious prosecution.); <u>Britton</u> v. <u>Maloney</u>, 196 F.3d 24, 28-29 (1st Cir.1999) (holding that "[f]or a state actor to violate the Fourth Amendment by initiating a malicious prosecution against someone, the criminal charges at issue must have imposed some deprivation of liberty consistent with the concept of a seizure"); <u>Sykes</u> v. <u>Anderson</u>, 625 F.3d 294, 308, 09 (6th Cir. 2010)(listing four requirements for a § 1983 Fourth Amendment malicious prosecution claim:(1) initiation of a criminal prosecution against the plaintiff that was made, influenced or participated in by the defendant; (2) a lack of probable cause; (3) the plaintiff must have consequently suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding must have been resolved in favor of the plaintiff.);  <u>Pitt</u> v. <u>District of Columbia</u>, 491 F.3d 494 (DC Cir. 2007)(holding that the Fourth Amendment provides a basis for a §1983 clam of malicious prosecution and citing <u>Singer</u> v. <u>Fulton County Sheriff</u>, 63 F.3d 110, 116 (2d Cir.1995)

(holding that "[t]he Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person"); Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir.1998) (holding that in a malicious prosecution action under the Fourth Amendment, "the constitutional violation is the deprivation of liberty accompanying the prosecution"); Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 183-84 (4th Cir.1996) (holding that "[a plaintiff's] allegations that [the defendant] seized him pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a § 1983 malicious prosecution claim alleging a seizure that was violative of the Fourth Amendment"); Castellano v. Fragozo, 352 F.3d 939, 953-54 (5th Cir.2003) (en banc) ("The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection — the Fourth Amendment if the accused is seized and arrested, for example. . . ."); Gregory v. City of Louisville, 444 F.3d 725, 748 (6th Cir.2006) (holding that "traditional claims for `malicious prosecution' [must] be pursued and treated as Fourth Amendment violations when the gravamen of the complaint is continued detention without probable cause"); Smart v. Bd. of Trustees of Univ. of Ill.,34 F.3d 432, 434 (7th Cir.1994) ("If malicious prosecution . . . is committed by state actors and results in the arrest or other seizure of the defendant, there is an infringement of liberty, but we now know that the defendant's only constitutional remedy is under the Fourth Amendment. . . ."); Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir.1996) (noting that "in the § 1983 malicious prosecution context, [the relevant] constitutional right is the Fourth Amendment's right to be free from unreasonable seizures"); Uboh v. Reno, 141 F.3d 1000, 1003 (11th Cir. 1998) (holding that malicious prosecution is actionable under § 1983 where "the plaintiff, as part of the commencement of a criminal proceeding, has been unlawfully and forcibly restrained in violation of the Fourth Amendment and injuries, due to that seizure, follow as the

prosecution goes ahead."); <u>Wood</u> v. <u>Kesler</u>, 323 F.3d 872, 881 (11th Cir. 2003) (plaintiff must prove violation of 4th Amendment right to be free from unconstitutional seizure as well as common law elements of malicious prosecution)).  <u>Contrast,</u> <u>Wilson</u> v. <u>Teves</u>, 2012 WL 3800847, *1-2 (D. Mass. 2012) (where the plaintiff was neither arrested nor detained.)

Here, the plaintiff alleged sufficient facts in his Amended Compliant to support his claim. Specifically, Keenan maliciously participated in and influenced the initiation of the criminal prosecution of the plaintiff in Suffolk Superior Court, in violation of his Fourth Amendment rights, on charges for which there was no probable cause, and as a result the plaintiff was detained on a $1,000 cash bail pursuant to Suffolk Superior Court docket SUCR11-10667.[2]  See, Ex. 1.  The prosecution terminated in the plaintiff's favor.  <u>Id</u>.  Keenan's argument that he was operating under a cloud of confusion as to the plaintiff's right to be free of a malicious prosecution that resulted in a violation of his Fourth Amendment right to be free of illegal restraint on his liberty therefore fails.

## III.  <u>CONCLUSION</u>

The plaintiff has demonstrated that the defendants' acts and omissions are not barred as a matter of law due to any claim of immunity and that he has pled the claims in such a manner as to survive a Motion to Dismiss at this stage, alleging such injuries and claims that relief can be granted.  WHEREFORE, the plaintiff, Solomon, hereby asks that this Honorable Court deny the

---

[2] Keenan argues that all claims must be dismissed because he enjoys unqualified immunity related to his perjured testimony.  See, Defendant's Memorandum, Section II, p. 7.  His argument misses the point.  The plaintiff makes no claims that rely on Keenan's perjury.  Rather, Keenan's testimony before the grand jury is evidence of his participation in and initiation of the malicious prosecution of the plaintiff in Suffolk Superior Court and his intention to carry out his threat against the plaintiff and his counsel.  See, <u>Jones</u> v. <u>City of Chicago</u>, 856 F.2d 985, 994 (7th Cir.1988); <u>Zahrey</u> v. <u>Coffey</u>, 221 F. 3d 342, 352, 353 n. 10; (2nd Cir. 2000).

defendant's Motion to Dismiss the complaint on the merits pursuant to Fed. R. Civ. P. 12 (b) (6).

The plaintiff,
Mr. Jeffrey Solomon,
By his Attorneys,

/s/ Victoria Kelleher                              /s/ Joseph M. Perullo
_____                    _____
Victoria Kelleher                                  Joseph M. Perullo
BBO# 637908                                        BBO# 670542
15 Church Street                                   185 Devonshire Street, Suite 200
Salem, MA 01970                                    Boston, MA 02110
(978)744-4126– p                                   (617)423-0030-p
(978)744-4127 – f                                  (617)556-9965-f
vkelleher@verizon.net                              jp@josephperullo.com

Dated:  July 15, 2013

## CERTIFICATION OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically
to the registered participants this day as identified on the Notice of Electronic Filing (NEF).


/s/ Victoria Kelleher